## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>　　　　Defendant. | Civil Action No. 1:25-cv-02034 |

## COMPLAINT

Plaintiff Gilbert P. Hyatt, by and through his attorneys Baker & Hostetler LLP, alleges as follows:

### Nature of the Action

1.  This is an action under the Patent Act, 35 U.S.C. § 145, to obtain a patent on patent application serial number 08/427,547 (Dkt. #439). For over three decades, Plaintiff Gilbert P. Hyatt has diligently prosecuted the '547 Application in the U.S. Patent and Trademark Office ("PTO"), as well as several hundred co-pending applications.

2.  Congress has provided a cause of action for an aggrieved patent applicant to bring a civil action under 35 U.S.C. § 145 to obtain *de novo* consideration of his entitlement to a patent. Mr. Hyatt brings this action to obtain a patent in this application.

### Parties

3.  Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued patents. Some of his patents and applications cover microcomputer structure, computer memory architecture, incremental processing, illumination devices, display devices, graphics systems, image processing, and sound and speech processing. He is 87 years of age and resides in Clark County, Nevada.

4. Defendant John A. Squires is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. He has overall responsibility for the administration and operation of the PTO, including the patent examination process. He is named as a defendant in his official capacity only.

## Jurisdiction and Venue

5. This action arises under the patent laws of the United States. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 145.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 35 U.S.C. § 145.

7. This Complaint is timely filed in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 90.3(a)(3)(i).

8. This matter has not been appealed to the United States Court of Appeals for the Federal Circuit.

## The '547 Application

9. Mr. Hyatt is the owner and inventor of U.S. Patent Application Serial No. 08/427,547 (Dkt. #439) (the "'547 Application").

10. The '547 Application has the benefit of the filing date of U.S. Patent Application Serial No. 05/550,231 (Dkt. #128) filed on February 14, 1975.

11. The '547 Application includes the following 90 claims: 34, 49, 95, 97, 100, 103, 108, 109, 112, 118, 121, 124, 126, 129–131, 133–137, 140, 141, 162, 163, 166, 167, 174, 176, 178, 179, 184, 188, 192, 194, 206, 210, 211, 217, 218, 221, 223, 225–229, 232, 242, 243, 245, 254, 259, 261, 264–267, 270, 272, 273, 278, 287, 292, 299, 300, 306, 310–313, 324, 326, 327, 334, 335, 337, 339, 345, 353, 355, 361, 370, 375, 376, 380, 384, 387, 394, and 401 (the "Subject Claims").

12. Mr. Hyatt is seeking issuance of a patent on the Subject Claims, but not on any other claims in the '547 Application.

13. The Subject Claims in the '547 Application are generally directed to the following subject matter:

    a. generating from a memory frequency domain data compressed information stored from a sequential pair of data compression processors, at least the first of which is a frequency domain processor; or

    b. outputting modulated information to a microwave data link and generating filtered information, both based on frequency domain information generated by transform processing, which in turn is based on both demodulated information received from a microwave data link and generated transducer information..

These lines of demarcation are further evidenced by the specific limitations of each Subject Claim. Each claim of the Subject Claims of the instant application has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications.

14. Mr. Hyatt filed the '547 Application on April 24, 1995. As such, this application is governed by the Transitional Rules under the Uruguay Round Agreements Act, Public Law No. 103-465 (1994) ("URAA"), including a provision the PTO implemented in 37 C.F.R. § 1.129(a) ("Rule 129(a)"), that limits to two the number of submissions that an applicant can file, to require limited further examination.

15. The '547 Application is deemed "special" under the PTO rules and must be "advanced out of turn." 37 C.F.R. § 1.102(a). It "continue[s] to be special throughout its entire course of prosecution in the [PTO], including appeal, if any, to the [Board]." MPEP § 708.01.

16. Mr. Hyatt has never made a dilatory filing in prosecuting the '547 Application. In contrast, the PTO suspended prosecution on at least two occasions (9/25/2009 and 4/19/2010), and entered new grounds of rejections at least as late as May 2018.

17. The PTO subjected all of Mr. Hyatt's applications, including the instant application, to the Sensitive Application Warning System ("SAWS"), from at least the late 1990s through 2015. In accordance with the terms of the SAWS, examiners lacked authority to allow Mr. Hyatt's patent applications. Moreover, under the terms of the SAWS, examiners and other PTO officials were directed to consider factors that are irrelevant to the statutory criteria for patentability in determining whether or not to permit Mr. Hyatt's applications to issue as patents. The inclusion of Mr. Hyatt's applications in the SAWS prejudiced the PTO in its consideration of Mr. Hyatt's applications, including the instant application.

18. In August 1995, the PTO sent a final office action rejecting all claims.

19. In October 1995, Mr. Hyatt filed a petition to withdraw the finality of the office action.

20. In November 1995, the PTO denied the petition.

21. In January 1996, Mr. Hyatt made a submission under Rule 129(a) removing the finality of the office action.

22. In March 1996, the PTO sent a non-final office action rejecting all claims.

23. In August 1996, Mr. Hyatt timely responded, and in September 1996, Mr. Hyatt filed a supplemental amendment.

24. In November 1996, the PTO sent a final office action rejecting all claims.

25. In January 1997, Mr. Hyatt filed a response after final amendment, which the PTO entered in February 1997.

26. In March 1997, Mr. Hyatt filed a notice of appeal; in August 1997, Mr. Hyatt made another submission under Rule 129(a) removing the finality of the office action; and in September 1997, Mr. Hyatt filed a supplemental amendment.

27. In November 1997, the PTO sent a non-final office action rejecting all claims; in March 1998, the PTO sent a revised non-final office action rejecting all claims; and in April 1998, the PTO sent a supplemental action resetting the time for response.

28. In September 1998, Mr. Hyatt timely responded.

29. In August 1999, the PTO sent a final office action rejecting all claims.

30. In January 2000, Mr. Hyatt filed a notice of appeal, and in July 2000, Mr. Hyatt timely filed an appeal brief.

31. For a period of more than a year, the PTO did not take any action on the merits. In October 2001, the PTO sent an examiner's answer.

32. In December 2001, Mr. Hyatt timely filed a reply brief.

33. For the next year and a half, the PTO did not take any action on the merits. In May 2003, the Board heard oral argument, and in June 2003, the Board sent a decision.

34. In August 2003, Mr. Hyatt timely filed a request for rehearing.

35. In November 2003, the Board granted rehearing in part.

36. In July 2004, Mr. Hyatt timely filed a complaint under Section 145.

37. In August 2006, the district court held that the Board erred in rejecting the claims and remanded to the PTO.

38. In October 2006, the PTO appealed to the Federal Circuit.

39. In December 2008, the Federal Circuit affirmed the district court's decision. *See Hyatt v. Dudas*, 551 F.3d 1307 (Fed. Cir. 2008).

40. In September 2009, the PTO sent a notice of an administrative remand to the examiner.

41. The PTO did not take any action on the merits for nearly five years after the Federal Circuit decision. Instead, the PTO suspended examination after the administrative remand on two occasions.

42. In September 2013, the PTO sent a so-called "Requirement" action that, among other things, purported to require Mr. Hyatt to select 600 claims for examination in applications of the "410 Family" (each of which have the same disclosure as the disclosure in the '547 Application) and to identify any earlier embodiment that falls within the scope of any selected claim that Mr. Hyatt believed was entitled to a priority date earlier than

5

April 7, 1986, or to provide a simple statement that the claim was described in the written description of parent application Serial No. 06/849,243 (Dkt. #310), filed on that date, excluding documents incorporated by reference.

43. In late 2013, the PTO sent similar Requirements in nearly all of Mr. Hyatt's applications.

44. In December 2013, Mr. Hyatt timely responded to the Requirement.

45. In May 2014, the PTO sent a non-final office action rejecting all claims.

46. In November 2014, Mr. Hyatt timely responded.

47. In Juny 2015, the PTO sent a notice of a continuing requirement, acknowledging that Mr. Hyatt's response was bona fide but requesting a replacement response.

48. In December 2015, Mr. Hyatt timely sent a replacement response.

49. For a period of more than a year and a half, the PTO did not take any action on the merits. In July 2017, the PTO sent a notice of non-responsive amendment, again acknowledging that the response was bona fide but entering a restriction requirement and requesting more information.

50. In December 2017, Mr. Hyatt timely sent a replacement response.

51. In May 2018, the PTO sent a non-final office action entering a restriction requirement and rejecting claims.

52. In November 2018, Mr. Hyatt timely responded, and in January 2019, Mr. Hyatt sent a supplemental response cancelling restricted claims.

53. In April 2019, the PTO sent a final office action rejecting all remaining claims.

54. In October 2019, Mr. Hyatt filed a notice of appeal; in April 2020, Mr. Hyatt filed two amendments cancelling certain claims; and in May 2020, Mr. Hyatt timely filed an appeal brief.

55. For another period, this time more than two years, the PTO did not take any action on the merits. In November 2022, the PTO sent an examiner's answer.

56. The PTO's failure to send an examiner's answer within six months violated the commitment it made to this Court in *Hyatt v. PTO*, No. 14-cv-01300-TSE-TCB, ECF 156 (E.D. Va.).

57. In March 2023, Mr. Hyatt timely filed a reply brief.

58. The PTO did not take any action on the merits for two and a half years. On September 16, 2025, the Board sent its decision affirming the rejections of each of the Subject Claims on at least one ground of rejection.

59. *De novo* consideration of Mr. Hyatt's entitlement to a patent on the '547 Application is uniquely necessary due to the PTO's decades-long campaign to prevent Mr. Hyatt from obtaining further patents on his inventions. Beginning in the mid-1990s, when PTO pulled several of Hyatt's applications from issuance, PTO has engaged in concerted action to prevent any of Hyatt's applications from issuing as patents. PTO placed Hyatt's applications into the SAWS program to prevent the mailing of a notice of allowance even where an examiner wished to allow Hyatt's applications. Where Hyatt prevailed before the Patent Board, PTO "recycled" his applications by reopening prosecution after he prevailed before the Board. PTO then began to thwart Patent Board review altogether by placing Hyatt's applications in an administrative purgatory that one federal judge referred to as "never-never land." During this time, PTO misrepresented its intent to act on Mr. Hyatt's applications to at least one federal court. Aspects of that campaign have been attested to in sworn testimony by officials who personally interfered with the examination, issuance, and appeal of Hyatt's applications.

60. Ultimately, after nearly two decades of prosecution, PTO threw out all prior activity and began prosecution anew with the goal of rejecting or forcing Hyatt's applications into abandonment. During this time, the very examiners who were supposed to be impartially examining his applications were creating disrespectful "memes" about him

that mirrored the language in the PTO's office actions and were sending emails disparaging his personal character. Meanwhile, PTO management instructed examiners to reject submissions Hyatt had not even made and, within three years of resuming examination, informed a federal court that PTO intended to reject all of Mr. Hyatt's applications. And PTO did, rejecting every claim in every application that the Office had not forced into abandonment, irrespective of the actual merits of the applications.

61. For these reasons, among others, PTO acted in bad faith and prejudiced the proceedings underlying the '547 Application.

### The Written Description Rejection

62. The PTO rejected Subject Claims 97, 103, 112, and 133 for alleged lack of written description within the meaning of pre-AIA 35 U.S.C. § 112, first paragraph.

63. The disclosure of the '547 Application describes the claimed subject matter of Subject Claims 97, 103, 112, and 133 in such manner that a person of ordinary skill in the relevant field of art would understand that Mr. Hyatt had possession of the invention claimed in that Subject Claim as of the '547 Application's effective filing date.

64. The rejection of Subject Claims 97, 103, 112, and 133 under pre-AIA 35 U.S.C. § 112, for alleged lack of written description under pre-AIA 35 U.S.C. § 112, first paragraph, is erroneous.

### The Prosecution Laches Rejection

65. The PTO rejected the Subject Claims and held the '547 Application entirely forfeited under the equitable doctrine of prosecution laches.

66. The rejection for prosecution laches is erroneous.

67. The prosecution laches rejection is erroneous because prosecution laches is not a valid ground of rejection under the Patent Act, particularly for the '547 Application, which is subject to the two-submission limit of the URAA Transitional Rules.

68. The prosecution laches rejection is erroneous because Mr. Hyatt did not delay prosecution.

69. The prosecution laches rejection is erroneous because any delay in the prosecution is attributable to the actions or inaction of the PTO.

70. The prosecution laches rejection is erroneous because any delay in prosecution fairly attributed to Mr. Hyatt is not unreasonable and not unexplained.

71. The prosecution laches rejection is erroneous because Mr. Hyatt's prosecution actions did not constitute an egregious misuse of the statutory patent system.

72. The prosecution laches rejection is erroneous because the PTO failed to warn Mr. Hyatt in advance of any specific actions or inaction of the risk of forfeiture of his rights under the Patent Act in or as to the '547 Application and failed to warn Mr. Hyatt of what specific actions he should take or not take to avoid forfeiture.

73. The prosecution laches rejection is erroneous because the PTO failed to make a sufficient showing of intervening rights.

74. The prosecution laches rejection is erroneous because the PTO unreasonably delayed in asserting prosecution laches after decades of prosecution activity by Mr. Hyatt, prejudicing Mr. Hyatt, who has invested significant amounts of time and money in the prosecution of the '547 Application.

75. The prosecution laches rejection is erroneous because the PTO has unclean hands.

### The Undue Multiplicity Rejection

76. The PTO rejected all of the Subject Claims under pre-AIA 35 U.S.C. § 112, second paragraph, as allegedly failing to distinctly claim the subject matter that Mr. Hyatt regards as the invention under the doctrine of undue multiplicity.

77. Each of the Subject Claims informs with reasonable certainty about the scope of each claim.

78. Each of the Subject Claims distinctly claims the subject matter that Mr. Hyatt regards as the invention.

79. The Subject Claims are distinguished from all claims that Mr. Hyatt seeks to pursue in all of his other applications because each of the Subject Claims are generally directed to the subject matter identified in paragraph 13 above, whereas Mr. Hyatt does not seek to patent any claims that meet the same descriptions in any other of his applications. Each of the Subject Claims contains further specific limitations. Each of the Subject Claims has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. Each of the Subject Claims of the '547 Application has ascertainable differences in scope from each other.

80. The rejection of the Subject Claims as unduly multiplied under pre-AIA 35 U.S.C. § 112, second paragraph, is erroneous.

### The Obviousness Rejections

81. The PTO rejected certain of the Subject Claims under pre-AIA 35 U.S.C. § 103 as allegedly being obvious over certain references.

82. The PTO rejected Subject Claims 97, 103, and 112 as obvious over Edwards (U.S. Patent No. 4,202,048), Tims (U.S. Patent No. 3,903,505), and Silverman (U.S. Patent No. 4,064,481).

83. The PTO rejected Subject Claim 133 as obvious over Edwards and Silverman.

84. Subject Claims 97, 103, 112, and 133 would not have been obvious to a person having ordinary skill in the relevant field of art as of the effective filing date of the '547 Application, from the above-identified references or their combinations.

85. The rejections under pre-AIA 35 U.S.C. § 103 are erroneous.

### The Provisional Double Patenting Rejections

86. The PTO has provisionally rejected Subject Claim 133 for non-statutory obviousness-type double-patenting over allegedly conflicting reference claim 14 of U.S. patent application Serial No. 08/419,326 (Dkt. #422) and Edwards.

87. The PTO has provisionally rejected Subject Claims 97, 103, 112, and 133 for non-statutory obviousness-type double-patenting over allegedly conflicting reference claim 85 of U.S. patent application Serial No. 08/428,359 (Dkt. #437) and Edwards.

88. The provisional non-statutory double-patenting rejections of Subject Claims 97, 103, 112, and 133 are erroneous.

89. The provisional non-statutory double-patenting rejections are insufficient to preclude issuance of a patent on the Subject Claims of the '547 Application because the reference claims have not issued.

## Objections

90. In addition to rejecting the Subject Claims, the PTO has objected to the specification and drawings.

91. All objections to the specification and drawings are erroneous because the specification and drawings comply with the requirements of law.

## Count I: Issuance of a Patent

92. The above paragraphs are hereby incorporated by reference as if set forth fully herein.

93. Patent Act Section 145 provides a cause of action for a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board to obtain a judgment that the "applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board." 35 U.S.C. § 145.

94. Each of the Subject Claims of the '547 Application was involved in the September 16, 2025, decision of the Patent Trial and Appeal Board.

95. Each of the Subject Claims of the '547 Application is patentable.

96. Each of the Subject Claims of the '547 Application satisfies all applicable legal requirements for issuance of a patent.

97. Mr. Hyatt is entitled to receive a patent on the Subject Claims in the '547 Application.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully asks that this Court enter Judgment in his favor and that he be granted the following relief:

A. A decree that Mr. Hyatt is entitled to receive a patent for the '547 Application on the Subject Claims;

B. A decree that the rejections of the Subject Claims of the '547 Application are erroneous;

C. A decree authorizing the Director of the United States Patent and Trademark Office to issue a patent for the subject matter claimed in the Subject Claims of the '547 Application;

D. A decree that the specification and drawings of the '547 Application comply with the requirements of law; and

E. Such other and further relief as the Court may deem just and proper.

Dated: November 13, 2025   Respectfully submitted,

/s/ Mark W. DeLaquil
MARK W. DELAQUIL (VA Bar No. 68088)
ANDREW M. GROSSMAN*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1527
agrossman@bakerlaw.com
mdelaquil@bakerlaw.com

*Attorneys for Gilbert P. Hyatt*

* Application for admission *pro hac vice* forthcoming